IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

MANUEL RAMIREZ,

          Petitioner,

     vs.

JOHN LEMPKE, Superintendent, Wende
Correctional Facility,[1]

          Respondent.

No. 9:13-cv-00072-JKS

MEMORANDUM DECISION

Manuel Ramirez, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas

Corpus with this Court pursuant to 28 U.S.C. § 2254. Ramirez is in the custody of the New York

State Department of Corrections and Community Supervision and is incarcerated at the Wende

Correctional Facility. Respondent has answered, and Ramirez has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On August 23, 2009, Ramirez, an illegal immigrant from Guatemala, attacked a woman

who was walking along a road, used physical force to restrain her, and caused her physical injury

by inserting a flashlight into her vagina. Ramirez was charged by Superior Court Information

with one count of first-degree aggravated sexual abuse.

At Ramirez's plea hearing, defense counsel represented that Ramirez had signed a 10-

page waiver of indictment and guilty plea after she had discussed the plea with him through an

interpreter and the plea/waiver form had been translated into Spanish. The court required

---

[1]     John Lempke, Superintendent, Wende Correctional Facility, is substituted for D.
Artus, former Superintendent, Wende Correctional Facility. FED. R. CIV. P. 25(d).

Ramirez to re-execute the form in open court after swearing him in.  Ramirez, through an interpreter, confirmed that he initialed and signed the document in open court and that he swore to the truth of it.  In the plea/waiver of indictment form, Ramirez acknowledged that he had discussed the proceedings and form with his counsel and that he was satisfied with her representation, he was not under the influence of drugs or alcohol and did not have any physical or emotional disabilities that prevented him from understanding the proceedings or his counsel's advice, and no one had threatened or forced him to execute the form or promised him anything.  Ramirez further acknowledged that he was waiving his right to remain silent, his right to a trial and its attendant rights, and that he could face up to 25 years' imprisonment.  Ramirez also indicated that he was not a United States citizen, and initialed the following section regarding the immigration consequences of his plea:

> 17.     I understand that, if I am not a citizen of the United States of America, a conviction may result in my deportation, exclusion from admission to the United States or denial of naturalization and that, if my plea includes a felony other than a violent felony offense or an A-I felony offense other than one defined in Article 220 of the penal law, and I become the subject of a final order of deportation issued by the United States Immigration and Naturalization Service, I may be paroled to the custody of INS for deportation purposes at any time subsequent to the commencement of any indeterminate prison sentence imposed as a result of my plea.

Ramirez acknowledged that he was pleading guilty, and initialed the following allocution:

> On or about August 23, 2009 I was in the Town of Stuyvesant on Eichybush Road. . . . On that time date and place I did attack a woman who was walking on the road and used physical force to restrain her.  When I physically restrained this woman I did insert a flashlight into her vagina.  While I physically restrained her and inserted a flashlight into her vagina I did cause physical injury to this woman.  I did all of these acts without the consent of this woman and against her will.

The parties also submitted a stipulation in which defense counsel stated that she had "discussed with [Ramirez] the facts of [his] case as well as the meaning of the waiver," and that she was "satisfied that he understands the waiver and its consequences." In that stipulation, the prosecutor stated that she consented to the waiver.

The court then elicited from Ramirez, again through the interpreter, that he was 31 years old, could read and write in Spanish, was sober, was not under the influence of any drugs, and did not have any physical, mental or emotional disabilities. Ramirez confirmed that no one had made any promises or threats to induce him into pleading guilty, and that he had made "all of [his] decisions with respect to this prosecution freely and voluntarily." Ramirez claimed to be satisfied with his attorney's representation and did not have any questions for counsel or the court. Ramirez stated that he understood that he had a right to a trial and a right to be prosecuted by indictment, and that he could receive a sentence of up 25 years' imprisonment and 20 years of post-release supervision. Ramirez then stated that he wished to be prosecuted by information rather than indictment, and that he additionally wished to give up his right to remain silent and his right to a trial. When questioned by the court, Ramirez indicated that he was not a United States citizen. Ramirez answered in the affirmative when the court then inquired whether he was aware that his guilty plea meant that he "may be deported on this conviction at any time." Ramirez also answered in the affirmative when asked if he understood "all the consequences of the decisions" he had made that day. Then court then specifically asked Ramirez if he wanted the court to accept his waiver of indictment, his waiver of his right to remain silent, his waiver of his right to a trial, and his guilty plea. Ramirez answered in the affirmative, entered a guilty plea, and then gave an allocution in which he admitted to using force to insert a flashlight into

the victim's vagina without her consent, thereby causing physical impairment and substantial pain. The court then accepted Ramirez's guilty plea.

Ramirez's pre-sentence investigation report ("PSR") indicates that he told his probation officer that he could not recall what happened on the evening of the incident. According to his PSR, he "had been drinking beer and . . . was not sure how many beers he had. He . . . was with a [woman] and they both fell and . . . he doesn't remember anything after that." In a section titled "Criminal Attitude," Ramirez's probation officer concluded:

> [Ramirez] has the presence of cognitions that serve to justify, support, or provide rationalizations for his criminal behavior. These cognitions include moral justification, refusal to accept responsibility, blaming the victim, and excuse making that minimizes the seriousness and consequences of his criminal activity.

At Ramirez's sentencing hearing, the prosecution argued that, according to the PSR, Ramirez failed to take responsibility for his actions, and, coupled with the harm caused to the victim, her family, and the community, he should receive the maximum sentence.

In response, defense counsel argued that Ramirez's statement during his pre-sentence investigation report, in which he claimed not to remember the incident, was the result of a misunderstanding. According to defense counsel, the probation officer visited Ramirez while he was in jail to conduct the pre-sentence investigation interview. The probation officer was not aware ahead of time that Ramirez did not speak English, and instead of rescheduling the interview so that an official interpreter could accompany him, he requested that a fellow inmate translate for Ramirez. Ramirez allegedly did not want to disclose the nature of his crime in front of that inmate out of fear that it would become common knowledge of the general prison population. He accordingly lied out of fear that the inmate who was translating would expose him. Defense counsel informed the court that he had asked the probation officer who conducted

the interview to attend the sentencing hearing in case the court wanted to question him about the circumstances of the pre-sentence investigation interview, but it is not clear from the record if the officer did in fact attend.

The court asked defense counsel if he would like to postpone sentencing in order to supplement the PSR, but counsel declined, stating "I'd like to offer just an explanation, and proceed as it is, if I may." Defense counsel explained that Ramirez's statement to his probation officer stood in "sharp contrast with what else has happened in the case since his arrest." Specifically, Ramirez "immediately confessed" to police, admitted to the crime at his plea hearing, and intended to make a statement during the sentencing hearing accepting responsibility and expressing remorse. Ramirez did in fact address the court and the victim shortly thereafter and apologized for his actions. The court sentenced Ramirez to 23 years' imprisonment, 20 years of post-release supervision, and surcharges totaling $1,425. The court also entered an order of protection against Ramirez, which it set to expire 5 years after the completion of his post-release supervision. In orally pronouncing Ramirez's sentence, the court did not factor in whether Ramirez had taken responsibility for his actions and expressed remorse.

Through counsel, Ramirez directly appealed, arguing that: 1) the probation officer's impromptu use of a fellow inmate to translate the pre-sentence investigation interview invalidated a "major portion" of the PSR in violation of New York Criminal Procedure Law ("CPL") § 390.20; 2) the trial court should have conducted "a more detailed colloquy of the rights which were being waived" because Ramirez lacked experience with the court system, did not speak or read English, and the offense and the consequences of his plea were "serious"; 3) defense counsel failed to affirmatively state on the record that she advised Ramirez of the

adverse immigration consequences of his guilty plea in violation of *Padilla v. Kentucky*, 559

U.S. 356 (2010); and 4) Ramirez's sentence was unduly excessive and harsh.

The Appellate Division affirmed Ramirez's judgment of conviction, first concluding that

he failed to preserve for review his contention that his plea was not knowingly, voluntarily, and

intelligently entered because he failed to move to withdraw his plea or to vacate the judgment of

conviction. *People v. Ramirez*, 934 N.Y.S.2d 728, 728 (N.Y. App. Div. 2011). The court further

concluded that, contrary to Ramirez's contention, the record established that he was properly

advised of the immigration consequences of his plea in compliance with *Padilla*, 559 U.S. 356.

*Id*. Finally, the court dismissed Ramirez's challenge to the accuracy of the PSR because counsel

declined the court's invitation to stay sentencing and supplement the report and also rejected

Ramirez's claim that his sentence was harsh or excessive. *Id*.

Ramirez filed a counseled application for leave to appeal to the New York Court of

Appeals. Counsel enclosed Ramirez's brief to the Appellate Division, but specifically raised

only the argument that the PSR was deficient because the probation officer used a fellow inmate

as an interpreter during the pre-sentence investigation interview and the trial court erred in

allowing defense counsel to waive supplementing the report. The Court of Appeals summarily

denied relief.

Ramirez timely filed his *pro se* Petition with this Court on January 14, 2013.

## II. GROUNDS RAISED

In his Petition before this Court, Ramirez raises the following claims: 1) the

investigator's impromptu use of a fellow inmate as an interpreter during his pre-sentence

investigation interview invalidated a major portion of the PSR in non-compliance with CPL §

390.20; 2) his guilty plea was involuntary because the court should have conducted "a more detailed colloquy" to establish that he was waiving his rights due to his inexperience with the court system, he did not speak or write English, and both the offense and the consequences of his plea were "serious"; 3) trial counsel was ineffective for failing to affirmatively state on the record the immigration consequences of his plea in contravention of *Padilla*, 559 U.S. 356; and 4) his sentence was harsh and excessive.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and

application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.    Exhaustion

Respondent correctly contends that Ramirez's claims are unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Exhaustion of state remedies requires the Petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim

is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).

Ramirez raised all of the instant claims on direct appeal to the Appellate Division. However, in his counseled application for leave to appeal to the Court of Appeals, Ramirez attached a copy of his brief filed with the Appellate Division, but only specifically raised the claim that his PSR was not validly waived and the PSR was defective because his probation officer used a fellow inmate to translate the pre-sentence investigation interview. Attaching an appellate brief is insufficient to effectively raise a claim for exhaustion purposes, and accordingly claims 2 through 4 are unexhausted. *See Jordan v. LeFevre*, 206 F.3d 196, 198-99 (2d Cir. 2000) ("arguing one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction"). In addition, Ramirez raised his claim regarding the PSR only on state law grounds, and accordingly claim 1 is also unexhausted.

Because Ramirez's claims are based on the record, they could have been raised in his direct appeal but were not; consequently, Ramirez cannot bring a motion to vacate as to these claims. CPL § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . ."). Moreover, Ramirez cannot now raise

these claims on direct appeal because he has already filed the direct appeal and leave application to which he is entitled.  *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991).

"[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted."  *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey*, 933 F.2d at 121.  A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell*, 547 U.S. 518, 536 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986), *superceded by statute on other grounds*, *United States v. Gonzalez-Largo*, No. 2:07-cr-0014, 2012 WL 3245522, at *2 (D. Nev. Aug. 7, 2012).

Ramirez's unexhausted claim that trial was ineffective for failing to state on the record the immigration consequences of his plea is not barred, however, because there is no time limit or number bar in filing writ of error coram nobis applications.  *See Smith v. Duncan*, 411 F.3d 340, 347 n.6 (2d Cir. 2005); *Turner v. Sabourin*, 217 F.R.D. 136, 147 (E.D.N.Y. 2003).  Ramirez may therefore still exhaust claim 3 in state court.  This Court could stay the petition and allow Ramirez to return to state court to satisfy the exhaustion requirement as to the remaining claim. *See Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001).  However, Ramirez has not requested that this Court stay and hold his petition in abeyance.  Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and

2) the unexhausted claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). In his Petition, Ramirez provides no reason why he did not seek relief on these claims through an additional coram nobis application to the state court.

In his Traverse, Ramirez concedes that claims 2 through 4 are unexhausted. He argues, however, that appellate counsel was ineffective for failing to raise these claims in his application for leave to appeal to the Court of Appeals, and that appellate counsel's ineffectiveness establishes cause for a procedural default. It is true that in certain circumstances, counsel's ineffectiveness in failing to properly preserve a claim for review in state court may satisfy the cause requirement. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Id.* Moreover, a claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Id.* at 452. There is no evidence that Ramirez presented an independent ineffective assistance of appellate counsel claim to the state courts, such as through a petition for a writ of error coram nobis. Accordingly, because Ramirez failed to assert a freestanding ineffective assistance of appellate counsel claim, he has failed to establish cause to excuse his procedural default on claims 2 through 4. In any event, because Ramirez's claims are without merit, this Court will reach the merits of Ramirez's claims.

B.    Merits

      Claim One: Use of an inmate as an interpreter and the validity of the PSR

As discussed *supra*, after the probation officer arrived at the prison to conduct Ramirez's pre-sentence investigation interview and discovered that Ramirez could not speak English, the

officer used a fellow inmate as an interpreter. Defense counsel claimed at sentencing that Ramirez did not feel comfortable disclosing in front of his fellow inmate the nature of his crime, and accordingly lied and told the probation officer that he could not recall the incident. Defense counsel declined the court's invitation to stay proceedings to supplement the PSR, instead explaining that Ramirez did take responsibility for his actions as evidenced by his immediate confession to the police, his guilty plea and allocution, and his statement at sentencing in which he apologized for his conduct.

In his counseled brief to the Appellate Division, Ramirez argued that "the entire [pre-sentence] interview and information therein [is] invalid" because the probation officer improperly asked another inmate to serve as an interpreter, causing Ramirez to lie out of fear that the nature of his crime would be revealed to the general prison population. Ramirez argued that a pre-sentence investigation and report may be waived with the consent of both parties and the consent of the judge whenever: 1) a sentence of imprisonment has been agreed upon by the parties and will be satisfied by the time served; or 2) a sentence of probation has been agreed upon by the parties and will be imposed; or 3) a PSR has been prepared in the preceding twelve months; or 4) a sentence of probation has been revoked. N.Y. Crim. Proc. Law § 390.20(4)(a). Ramirez claimed that trial counsel waived the right to a complete PSR by declining the court's invitation to supplement it, but that the waiver was invalid because it did not meet any of the statutory grounds for waiver as set forth in CPL § 390.20(4)(a), and the waiver was effectuated without Ramirez's consent. The Appellate Division rejected this claim, concluding that Ramirez could not complain of the PSR's inadequacies because defense counsel declined the trial court's offer to stay sentencing to supplement the report. *Ramirez*, 934 N.Y.S.2d at 728.

In his counseled application for leave to appeal to the Court of Appeals, Ramirez again argued that trial counsel waived his right to a PSR, the waiver was invalid, and the court should accordingly look through the waiver and find the PSR deficient because an inmate was used as an interpreter. The Court of Appeals summarily denied relief.

Ramirez now claims, as he did on direct appeal, that the investigator's use of a fellow inmate as an interpreter "invalidated a major portion of the [PSR] resulting in noncompliance with CPL [§] 390.20."

Ramirez's claim that defense counsel improperly waived his right to a complete PSR without his consent or a state statutory basis to do so and that the PSR is invalid because the probation officer improperly used an inmate to translate the pre-sentence investigation interview is not cognizable on federal habeas review. Rather, these are matters of state law not reviewable by this court. *Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citations omitted)); *see, e.g., Pardo v. Leonard*, No. 88 CV 2072, 1989 WL 38325, at *1 n.1 (E.D.N.Y. Apr. 6, 1989) (petitioner's claim that the PSR "was not prepared as specified by law" raised only an issue of state law not cognizable on federal habeas review). And although the Second Circuit has held that a convicted defendant must have the opportunity to rebut allegations likely to affect his sentence, such as those set forth in a PSR, a defendant's challenge may take the form of argument and comments directed to the court. *United States v. Lee,* 818 F.2d 1052, 1056 (2d Cir. 1987); *United States v. Romano,* 825 F.2d 725, 730 (2d Cir. 1987). Counsel for Ramirez was afforded and took advantage of that

opportunity here, declining to stay proceedings to supplement the PSR and instead choosing to explain that Ramirez felt compelled to lie during his pre-sentencing investigation interview. Counsel apparently also requested that the probation officer attend the sentencing hearing to corroborate the circumstances of the pre-sentence investigation interview. Counsel rebutted the accuracy of the PSR by arguing that Ramirez had in fact demonstrated remorse during his immediate confession to police, his guilty plea and allocution, and his apology to the victim, and the Due Process Clause does not require more. *See, e.g.*, *Pardo*, 1989 WL 38325, at *1-2 (petitioner's challenge to the PSR by oral argument at the sentencing hearing satisfied the Due Process Clause).

Claim Two: Insufficient colloquy

Ramirez next argues, as he did on appeal to the Appellate Division, that the court's colloquy was insufficient to establish that his plea was voluntary. Ramirez argues that the trial court "should have employed a more detailed colloquy of the rights which were being waived" because he was inexperienced with the court system, he could not speak or read English, and because both the charge and the consequences of a guilty plea were "serious." The Appellate Division held that Ramirez failed to preserve this argument for review by moving to withdraw his plea or vacate the judgment, and inasmuch as his plea colloquy did not "cast doubt upon his guilt or call the voluntariness of his plea colloquy into question," his case did not "fall within the narrow exception to the preservation rule." *Ramirez*, 934 N.Y.S.2d at 728.

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)

(quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005) ("A plea of guilty is considered voluntary and intelligent if the defendant enters the plea with full awareness of its 'direct consequences.'" (quoting *Brady*, 397 U.S. at 755)). A court may not accept a plea "without an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Brady*, 397 U.S. at 747 n.4. "While a trial judge is required to make a record that affirmatively discloses that the defendant's guilty plea is intelligent and voluntary, he or she is not required by federal law to engage in any particular interrogatory 'catechism' akin to that required of federal courts by Federal Rule of Criminal Procedure 11." *Hanson v. Phillips*, 442 F.3d 789, 798 (2d Cir. 2006). Rather, "[t]he voluntariness of a guilty plea is reviewed by examining the totality of the relevant circumstances." *Id.*

The record, when viewed as a whole, affirmatively shows that Ramirez entered his plea intelligently and voluntarily. Ramirez signed the plea form in open court after it had been translated into Spanish and after he had discussed it with his attorney, and he swore to the truth of its contents. In that form, Ramirez acknowledged that he was waiving his right to remain silent as well as his right to a trial, which included a waiver of the attendant rights to call witnesses, cross-examine the People's witnesses, introduce evidence and put forth a defense, make motions and request pre-trial hearings, have the court instruct the jury that no negative inferences could be made against him if he chose not to testify, call witnesses, cross-examine witnesses or present a defense, and that the People had the burden of proving his guilt beyond a reasonable doubt. Ramirez acknowledged in that document that he had sufficient time to discuss the plea form with his attorney, and stated both in that form and in open court that he was

satisfied with his counsel's representation. Counsel also assured the court that she had discussed the plea form with Ramirez, and also executed a stipulation stating that she was satisfied that Ramirez understood the plea/waiver form and its consequences. When questioned by the court, Ramirez stated that he was sober, was not under the influence of drugs, and that he did not have any mental, physical or emotional disabilities. Ramirez confirmed that he had not been threatened or coerced into pleading guilty, and that no promises had been made to induce his plea. Ramirez stated in open court that he understood his right to remain silent, his right to a trial, and his right to prosecution by indictment, and requested that the court accept his voluntary waiver of those rights. The court reiterated Ramirez's sentencing exposure and the immigration consequences of his plea, which were also set forth in the plea form. Ramirez then pled guilty and gave an allocution detailing the nature of his conduct.

Ramirez's argument that his plea was involuntary, unknowing, and unintelligent because the court engaged in an insufficient colloquy is belied by the record. The plea colloquy and 10-page plea form were comprehensive and thorough, and Ramirez does not assert specifically what he believes the colloquy lacked. The record indicates that Ramirez repeatedly acknowledged the rights he was waiving and the consequences of his plea, and a criminal defendant's self-inculpatory statements made under oath at his plea allocution "carry a strong presumption of verity," *United States v. Maher,* 108 F.3d 1513, 1530 (2d Cir. 1997) (quoting *Blackledge v. Allison,* 431 U.S. 63, 74 (1977)), and "are generally treated as conclusive in the face of the defendant's later attempt to contradict them," *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999). The record also indicates that defense counsel and the court took sufficient steps to ensure that Ramirez, who did not speak, read, or write in English, understood the plea form and

the plea proceedings. Ramirez is correct in asserting that the consequences of his plea were serious—after all, he faced up to 25 years' imprisonment and deportation—but both the court and the plea form informed him of these consequences, and Ramirez acknowledged that he understood and accepted those consequences. An independent review of the record therefore indicates that the plea colloquy and plea form were exhaustive, and Ramirez's plea was knowingly, voluntarily, and intelligently entered.

Claim Three: Ineffective assistance of counsel

Ramirez next argues that his trial counsel was ineffective for failing to "affirmatively state on the record that [he] had been advised on the adverse immigration consequences of his felony guilty plea." The Appellate Division rejected this claim on direct appeal, concluding that the record established that, "contrary to [Ramirez's] contention, . . . he was properly advised of the immigration consequences attendant to his plea [pursuant to *Padilla*, 559 U.S. 356] and, therefore, he received the effective assistance of counsel." *Ramirez*, 934 N.Y.S.2d at 728.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Ramirez must show that his trial counsel's representation was not within the

range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 124 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that defendant did not receive a fair trial.'" *Id.* at 124 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840

N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

Ramirez is correct in asserting that in *Padilla*, the United States Supreme Court held that counsel has a duty to inform his client that his plea carries a risk of deportation. 559 U.S. at 374. Ramirez, however, does not argue that counsel failed to advise him that his plea carried the risk of deportation, and such a claim would be contradicted by the record. As discussed *supra*, Ramirez signed the plea form, in which he acknowledged that he was not a citizen and that his plea carried the risk of deportation. Ramirez admitted that he had discussed the plea form with his attorney and that he was satisfied with her representation. His counsel filed a stipulation stating that she had discussed the form with Ramirez and that she was satisfied that he understood its consequences. Additionally, in open court, Ramirez indicated that he understood that his plea meant that he "may deported . . . at any time." Ramirez appears to be asking this Court to extend *Padilla* to mean that not only must counsel inform his or her client of the immigration consequences of his plea, but counsel must also affirmatively state on the record that she has done so. Nothing in *Padilla*, however, supports this interpretation. The Appellate Division's conclusion that counsel complied with *Padilla* and sufficiently warned Ramirez of the

immigration consequences of his plea was not contrary to or an unreasonable application of federal law, and Ramirez cannot prevail on this claim.

Claim Four: Harsh and excessive sentence

Ramirez next argues that his sentence was "unduly excessive and harsh." The Appellate Division summarily rejected this claim on direct review. *Ramirez*, 934 N.Y.S.2d at 728.

It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law). As Respondent notes, first-degree aggravated sexual abuse is a class B felony which carries a maximum prison term of 25 years. N.Y. PENAL LAW §§ 130.70, 70.00(2)(b). Ramirez was sentenced within that statutory range to 23 years' imprisonment, and he thus cannot prevail on this claim.

## V. CONCLUSION

Ramirez is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Second Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 7, 2014.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge